[PHILADELPHIA, JANUARY 23, 1832.]

## M'CREADY and another *against* FREEDLY.

#### IN ERROR.

A covenant in a deed of partition between *A.* and *B.* that they shall at their equal and joint expense, cause the canal or race through their respective lots from the dam, &c. to be widened and improved in the manner therein specified, and the race and head gates at all times forever to be kept in order at their equal and joint expense, does not render them jointly liable for work done to the canal, &c. by order of *A.* alone, and it is error in the court to charge the jury, that the covenant in the deed of partition, and the fact of the work having been done, were *some evidence* of a *joint* agreement on the part of *A.* and *B.* with the plaintiff to do the work.

Nor are the declarations or admissions of *A.* without any authority being shown from *B.*, to make a contract binding them both jointly, any evidence whatever of a joint contract.

Nor are the circumstances of *B.* having been frequently at the place when the work was done, and having his agents there, while it was going on, and saying nothing to the plaintiff to induce him to believe, that he was to look to *A.* alone for payment, any evidence of *B.*'s liability.

WRIT of error to the Court of Common Pleas of *Montgomery* county, in an action of *assumpsit* for work and labour done, and materials furnished, in which the defendant in error, *Jacob Freedly*, was plaintiff, and the plaintiffs in error, *Bernard M'Cready* and *Samuel R. Wood*, defendants.   The defendants below pleaded *non-assumpserunt*, set-off and payment, upon which issues were taken.

*Kittera*, for the plaintiffs in error.

*Rawle*, junr. for the defendant in error.

The opinion of the court was delivered by

KENNEDY, J.—On the trial of this cause, it appeared in evidence, that *M'Cready* and *Wood* had been the owners of, and held as tenants in common, a lot of land at *Norristown* in *Montgomery* county, through which a canal or race had been made to conduct the water from the *Schuylkill* river, and was used by them for manufacturing purposes.   On the 30th of *January*, 1826, a partition by deed of that date was made and executed between them, and among other things in it, the following clause is contained : " They, the said *Samuel R.* " *Wood* and *Bernard M'Cready* agree, that they, their heirs and " assigns, at their equal and joint expense, shall cause the canal or " race through their respective lots from the dam to *De Kalb* street, " to be widened so as to take in one half of the. river *Schuylkill*, " when the water is at its lowest stage, and to be walled from the " bottom to the height of six inches above the level of the water in " the dam ; which race and the head gates shall at all times forever " be kept in order at the equal and joint expense of *Samuel R. Wood* " and *Bernard M'Cready*," &c.

(M'Cready and another *v.* Freedly.)

This suit was brought to recover the price of work and labour done, and materials furnished for the accomplishment of the same, by *Freedly*, at this race mentioned in the covenant between *Wood* and *M'Cready*, in the deed of partition just recited. It was proved, that the work and materials were done and furnished by *Freedly*, and that he was employed by *Wood* for that purpose. Likewise that two persons, after the work was done, were appointed by *Freedly* and *Wood*, to measure it, who after doing so, and making out a bill of it, showed it to *Wood*, who asked for a copy of it to give to *M'Cready*, who, as he (*Wood*) said, was equally interested with him. There was also some evidence given, that *M'Cready* was frequently at the place and passing it, while the work was in progress, but he also had persons at work there or close by at the same time. There was no evidence given, which went in the slightest degree to show, that *M'Cready* had any knowledge or reason to suspect, that *Freedly* intended to look to him for payment, until after the work was done some time, and *Wood* had become unable to pay.

There was evidence given on the part of *M'Cready*, that he had employed and paid hands for walling and doing the work mentioned in the deed of partition on that part of the race opposite to his mill and allotment in the partition that was made, the amount of which was sixteen or seventeen hundred dollars. It was attempted on the part of the plaintiff below to rebut the effect of this last evidence by showing that he had done work for *M'Cready* in building or assisting to build a factory for him, and that in a suit brought by *Freedly* against *M'Cready* for this last work mentioned, he (*M'Cready*) claimed as a set-off this, sixteen or seventeen hundred dollars, which he had paid for work done at his part of the race, because that *Freedly* by a contract in writing made with *M'Cready* and *Wood* jointly, in 1825, had undertaken to do all that same work in a particular manner, and had been paid for doing it, but failed to finish the work in the manner he had undertaken and agreed to do.

The court below in their charge to the jury, told them, that the covenant or agreement between *Wood* and *M'Cready* contained in their deed of partition, and which has been recited, taken in connexion with the fact of the work being done by *Freedly*, was some evidence of an agreement on the part of *Wood* and *M'Cready* with the plaintiff below, to do the work for which this suit was brought. This part of the charge is the ground of the first error, which has been assigned.

This covenant or agreement between *Wood* and *M'Cready* is not in the nature of a partnership agreement, which gives each and every of the partners full power and authority to make contracts in the name and on behalf of all, and to bind all where the contracts are made for the purpose of promoting the end and design of the partnership. After such a contract is made by one partner, all are bound by it, and become liable for the fulfilment of it in whole, not each for his proportion, but each for the performance of the whole

(M'Cready and another *v.* Freedly.)

contract, and may be compelled by suit to make redress to the party aggrieved in case of a breach; in which suit, although all must be joined, after a judgment is had against them, the amount of the debt or damages recovered, may be levied out of the property of any one or more of them. In this agreement there is certainly no express authority given to one or other of them to make contracts for the purpose of having the work and object therein mentioned, accomplished, and to bind both of them for the payment of it when done. The race, which ranged along the allotment of each, was considered after the division as being throughout of common advantage to both, and the object of the covenant seems to have been a provision for putting and keeping it and the head gates in a certain state of repair, and in case one of them should neglect to do or to have done one half of all that was necessary to effect this, to put it in the power of the other to do or cause it to be done, and to charge the one neglecting with one half of the expense, but certainly in no event to subject and make him liable to pay the whole of it, which would in effect be the case, if the charge of the court below to the jury was right on this point. Neither can I conceive, that any such authority is implied by this agreement, because to effect the design and object of the parties, it was in no wise necessary; and since neither the terms of the covenant, nor yet the nature of the thing to be done, require such authority to be exercised, there can be no colour for saying, that it existed. If this covenant then gave no authority to *Wood* to bind *M'Cready* to pay whomsoever *Wood* might choose to engage to perform the work or part of it, say upon that portion too of the property which became his by the partition, as was the case in this instance, it is clear that neither the covenant alone, nor yet the covenant and the fact of the work having been done by the plaintiff below at the request of *Wood*, could be considered any evidence whatever to the jury of the joint liability of *Wood* and *M'Cready* to pay *Freedly* for his labour and materials done and furnished in walling the race, &c. There was error therefore in this part of the charge.

The court, also, in their charge, told the jury, that *Wood's* asking for a copy of the bill of the admeasurement of the work done by the plaintiff below, and saying that he wanted it for *M'Cready*; that he was equally interested with himself, might be taken by them as some evidence of a joint contract. In this, I think, the court was wrong. The declarations or admissions of *Wood*, without any authority either express or implied, being shown to have been given by *M'Cready* to *Wood*, to bind him, or to make a contract binding them jointly, were no evidence whatever of a joint contract, and were not admissible for the purpose of charging *M'Cready*, either singly or jointly. Beside, from the nature of the arrangement between *Wood* and *M'Cready*, and their accountability to each other, growing out of their covenant, it was requisite that each should keep and preserve an account of

(M'Cready and another *v.* Freedly.)

what he did or procured to be done, otherwise he might have to bear more than his due proportion of the whole burden.

The court also directed the jury, that they might consider the circumstances of *M'Cready*'s having been frequently at the place, and his having his agents there during the whole time the work was going on, and his saying nothing to *Freedly* to induce him to believe that he was to look to *Wood* alone for his pay, as some evidence of *M'Cready*'s liability. It appears to me, that the court below also erred in this matter; for unless the evidence in regard to this, had gone to show that *M'Cready* and his agents were there for the very purpose of superintending and directing the work that the plaintiff below was engaged in doing, no inference of *M'Cready*'s connexion with *Freedly*, or liability to pay him for the work, could be reasonably drawn; and why should *M'Cready* have told *Freedly* not to look to him for his pay, when it did not appear that he had reason to believe that *Freedly* intended to do so. Indeed, it did not appear that *Freedly* had any such idea of it himself, until afterwards, when he found that *Wood*, who contracted with him, was unable to pay; for, in making the contract, *M'Cready* was not named as a party to it, nor was it said that he was to pay any thing. To produce a like bearing, the court also referred to the contract of 1825, which was one that had been reduced to writing, and signed by *Wood* and *M'Cready*, each, as one party, and by *Freedly*, as the second party to it. This, it is conceived, could and ought not to have had any weight whatever in determining the liability of *M'Cready*. It did not relate to the same labour for which the suit was brought, and if it showed any thing, it was, that when *M'Cready* intended to make himself liable, he became a party to, and signed the contract, binding himself expressly to pay, in conjunction with *Wood*, for it. So that it might as well have been inferred from this, that when they intended to be jointly bound, they both joined expressly in making the contract.

The last error complained of, is, that part of the charge in which the court below, in observing upon the effect of evidence given on the part of the defendants below, going to prove that *M'Cready* had, at his own expense, walled the race opposite to his land, and from which, as *M'Cready*'s counsel had contended, the jury might fairly infer, that *Wood* was not only left, but bound to do, at his own expense, what he had employed the plaintiff below to perform, told the jury, that as the same witness by whom *M'Cready* made this proof, upon his cross-examination, said that in another action brought by the plaintiff below against *M'Cready*, to recover a claim which *Freedly* had against *M'Cready*, for work done, in building a factory for him; that *M'Cready*, on a trial of it before arbitrators, charged *Freedly* with this work, which he, *M'Cready*, had done at his own cost, in walling the race, &c. opposite to his own lot, and claimed a set-off for it, and that, if this set-off was allowed to *M'Cready*, no inference could be drawn in his favour from the evidence of that witness, and

(M'Cready and another *v.* Freedly.)

if the claim was set up as a set-off by *M'Cready*, and although the award which was made in the case was appealed from, and thereby set aside, yet as the controversy was afterwards settled by the parties, without any evidence being given of the terms, whether such claim by *M'Cready* against *Freedly* was allowed or not, that the jury might still presume that it was allowed or settled.  I must confess that I do not see how *M'Cready*'s claiming and being allowed by *Freedly* for this work, which *M'Cready* proved that he had done, in widening and walling the race, &c. at his own expense, rebutted the effect of the evidence which the court seemed to think it otherwise ought to have produced; because, if, as was alleged and contended for by *M'Cready*, that he previously paid *Freedly* for doing all this work under the contract which he made for doing it with *Wood* and *M'Cready* jointly in 1825, and *Freedly* had failed to do it, and therefore *M'Cready* had to do it himself, it was right that *Freedly* should reimburse *M'Cready*, and this circumstance could not detract in the least from the effect that *M'Cready*'s having done this work and paid for it out of his own funds, otherwise ought to have had in going to show that he and *Wood* had been each *separately* employing persons to widen and wall up the race opposite to their respective lots of the property which was once held by them as tenants in common.

The judgment of the court below is reversed, and a *venire de novo* awarded.