# Hindman *v.* Pittsburgh Trust Co., Appellant.

*Contract—Attorney-at-law—Compensation for services—Several clients—Joint or several liability—Implied promise—Evidence—Amounts received from other parties.*

1. An attorney-at-law may recover from one of three baseball clubs for services rendered such club where there was no joint interest nor any joint undertaking by the three clubs to pay the attorney nor any agreement to pay him except such as the law would imply from services rendered on request to each of them; an implied promise follows the nature of the consideration, and as that is joint or several, so will the promise be.

2. A single undertaking for the performance of several duties is in its nature divisible, and this is especially true in the employment of counsel.

3. In an action by the attorney against one of the clubs, evidence is properly excluded, which tends to show the amount the plaintiff had received from the other clubs.

*Evidence—Cross-examination—Contents of bill—Bill in court—Offer of compromise—Appeal.*

4. In an action by an attorney to recover for services where a bill made out by the plaintiff is offered in evidence, the plaintiff cannot be cross-examined as to the contents of the bill which the evidence, undisputed at that time, showed was an offer of compromise. He could not in any event properly be cross-examined as to the contents of a paper that was present in court.

5. Where the trial judge leaves it to the jury to find whether the bill was in fact an offer of compromise, and the jury so finds, the defendant cannot, on appeal, complain that the bill was excluded.

Argued October 21, 1919.  Appeal, No. 137, Oct. T., 1919, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1918, No. 1992, on verdict for plaintiff in case of James E. Hindman v. Pittsburgh Trust Co.,

Receiver of the Pittsburgh Exposition Park Association. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING and KEPHART, JJ. Affirmed.

Assumpsit for professional services. Before COHEN, J.

At the trial the following offer was made:

"By Mr. Balph: Counsel for defendant offer to ask the witness, on cross-examination, as testing the correctness of his testimony as to $5,000 being a reasonable fee for his services in this matter, whether or not he did not, immediately after the money was paid over by him to the trust company as receiver, render a bill to the trust company in the sum of $2,500, in full for his services.

"By Mr. Marshall: Objected to on the ground that the witness has already stated that this was in regard to a compromise and in the course of a compromise of this claim.

"By the Court: The ruling has already been made. The proposed offer is identical with the question upon which the ruling was predicated. I understood he had answered that—in an interview with Mr. Smyers pertaining to the fee, in reference to the drawing up of this particular paper—was at the time they were discussing a compromise of this claim.

"By Mr. Balph: I am asking him if he rendered that bill.

"By the Court: Of course he rendered that bill, but I say it has nothing to do with this case.

"Exception noted." (6)

Defendant presented, amongst others, the following point:

9. According to testimony of plaintiff, his employment on the 6th day of August, 1917, at the Waldorf hotel in the City of New York, was a joint employment by the Brooklyn Club, the Newark Club and the Pittsburgh Trust Company as receiver of the Pittsburgh Exposition Park Association for services required in adjusting certain disputes or differences between said clubs and said

national and American leagues under the written contract of December 22, 1915, and that the services rendered by plaintiff under said employment were rendered jointly for all three of said clubs; this separate action brought against the receiver of the Pittsburgh Exposition Park Association Club for such services cannot therefore be maintained and the verdict should be for defendant.

Affirmed if jury find that the Pittsburgh Exposition Park Association's fee to the plaintiff for services was contingent on the settlement of those disputes and that there was any dispute as to claim of defendant against the American and national league under the peace contract.   (3)

Verdict and judgment for plaintiff for $4,000.   Defendant appealed.

*Errors assigned,* among others, were (3) above instructions, quoting it; (6) ruling on evidence, quoting the bill of exceptions.

*James Balph,* with him *R. A. Balph,* for appellant.— The rule of law is that where the contract is joint the remedy must also be joint: Boggs v. Curtin, 10 S. & R. 211; Irwin v. Brown, 35 Pa. 331; Marys v. Anderson, 24 Pa. 272; Taylor & Fitzsimmons v. Henderson, 17 S. & R. 457; Murtland v. Floyd, 153 Pa. 99; Moore v. Hepburn, 5 Pa. 399.

*Thomas M. Marshall, Jr.,* with him *Thomas M. Marshall,* for appellee.—Where the obligation is joint and several, the obligee may elect to sue the obligors jointly or singly: Sessions v. Johnson, 95 U. S. 347; Seymour v. Western R. R. Co., 106 U. S. 103.

Whether or not a contract with several persons on either or both sides is to be construed as joint or several depends upon the intention of the parties as manifested

in the evidence of their agreement: Adriatic Fire Ins. Co. v. Treadwell, 108 U. S. 361.

OPINION BY MR. JUSTICE WALLING, January 5, 1920:

This is an action of assumpsit for legal services. To the major base ball leagues, viz: the American League and the National League, a third, known as the Federal League, was added in 1912. The latter established clubs in Baltimore, Brooklyn, Newark and Pittsburgh, but proved a disturbing factor in the national game to such an extent that in December, 1915, the three leagues made an agreement known as "the peace agreement," by which the Federal league was to retire from the field and its several clubs were to be reimbursed by the major leagues for expenses incurred in fitting up athletic grounds, etc. By this arrangement the Pittsburgh Exposition Park Association, as a club of the Federal league, was to receive $50,000, the Brooklyn club, $400,000, payable in twenty annual installments, in the nature of a rental, and the Newark club, it is stated, was to receive $20,000. But the Baltimore club refused to abide by the peace agreement and brought suit against the major leagues, claiming $900,000 damages; pending which the latter refused to pay the other clubs the sums above specified. That suit was discontinued in June, 1917, but it had involved the major leagues in a large amount of counsel fees and further expenses and might still be renewed, as in fact it was later, so there were further obstacles to a settlement with the other clubs. Meantime the Pittsburgh Exposition Park Association had passed into the hands of the defendant trust company as receiver. In an effort to adjust the matter a meeting of the parties in interest was held in New York, August 6, 1917, at which defendant was represented by its vice-president, Bert H. Smyers, Esq., the major leagues by their respective presidents and by counsel, the Newark club by a Mr. St. Clair and the Brooklyn club by the plaintiff, James E. Hindman, Esq., of the Pittsburgh bar, who had long

been acting as its attorney. During the negotiations it was arranged, as plaintiff testifies, that he should represent the defendant and the Newark and Brooklyn clubs as attorney in adjustment of matters with the major leagues, which he accordingly did. The final settlement was not effected until February or March, 1918. Meantime plaintiff made eleven trips to New York and one to Cincinnati, all at his own expense, and obtained the approval of the court and also of the officers of the Pittsburgh association to the final settlement, by which defendant received the $50,000, without interest. The settlement also included payments to the Brooklyn and Newark clubs, but there was no common interest in any of the moneys so received, although the delay in payment to each resulted from the same cause. Plaintiff rendered defendant a bill of $2,500 for his services, which was refused. There was a conflict in the evidence as to when plaintiff was employed by defendant, also as to the extent and value of his services, and as to whether the bill rendered was an offer of compromise. In addition to the $500 judgment tendered plaintiff, he recovered a verdict for $4,000, and from judgment entered thereon defendant brought this appeal.

A careful examination of the record discloses no reversible error. The contention that the evidence showed such a joint liability of the three clients represented by plaintiff as to preclude recovery against one is not tenable. A joint liability results from a joint interest or a joint undertaking. Here there was neither. The other clubs had no interest in the $50,000 received by defendant, nor had defendant any interest in what they received, nor was there any joint agreement to pay plaintiff, or in fact any agreement to pay him except such as the law would imply from services rendered on request; and the proof was confined to services rendered the defendant. "An implied promise......follows the nature of the consideration; and as that is joint or several so will the promise be": from opinion of Judge GIBSON in

Boggs v. Curtin, 10 S. & R. 211, 213. The fact that there was a single request for plaintiff to represent the three clubs would not create a joint liability for his services inasmuch as their interests were separate. A single undertaking for the performance of several duties is in its nature divisible (Duncan v. Willis, 51 Ohio 433, 442), and this is especially true in the employment of counsel: Adriatic Fire Ins. Co. v. Treadwell, 108 U. S. 361. In the case last cited a committee representing several fire insurance companies employed an attorney to defend the companies in suits brought against them for a fire loss, and it was held that he could not maintain a joint action for his services. See also M'Cready and another v. Freedly, 3 Rawle 251. The services performed for defendant in Pittsburgh could not in any aspect of the case be common to the other clubs, nor could those performed for the Brooklyn club prior to the New York meeting. In so far as there was a joint request that plaintiff represent the three parties it may have been, as plaintiff testified, a joint employment, but we agree with the court below that the liability was several and not joint. That an employment is such as to create a joint liability is a conclusion from all the facts and is not warranted here.

As there was no joint liability to plaintiff, the court below properly excluded evidence tending to show the amount he had received from the other clubs. In an action for legal services it is not competent to show what the plaintiff received from other clients, especially where as here the circumstances are dissimilar.

The error assigned as to the alleged exclusion of the bill rendered by plaintiff is based on a misapprehension of the ruling of the trial judge. The bill was not excluded unless the jury found as a fact it was rendered during negotiations for a settlement and was an offer of compromise. This clearly appears at page 117 of the appendix where the judge says, "The court sustains the objection to the consideration of this bill, if the jury

finds in its deliberations that the bill was made during a compromise being discussed by Mr. Smyers and Mr. Hindman; but if the jury finds from the evidence that the bill was delivered by Hindman to Smyers at a time when there was no discussion or no consideration pertaining to a compromise, then the bill is to be considered by them in evidence. I leave it to the jury." The same thought is elaborated in the general charge and in answer to defendant's eighth point. So the defendant had the full benefit of that piece of evidence on the only basis upon which it was admissible, to wit: a finding that it was not an offer of settlement.

When the plaintiff was first on the witness stand he could not be cross-examined as to the contents of a bill which the evidence, undisputed at that time, showed was an offer of compromise. In any event he could not properly be cross-examined as to the contents of a paper that was present in court.

The assignments of error are overruled and the judgment is affirmed.